UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
_____
                                  )
JORGE GARCIA, ZACHARY DUCLOS,     )
GEORGE KENT, and JENNIFER MILLER, )
on behalf of themselves and all   )
others similarly situated,        )
                                  )
             Plaintiffs,          )
                                  ) Civil Action No. 13-12536-PBS
        v.                        )
                                  )
E.J. AMUSEMENTS OF NEW HAMPSHIRE, )
INC. d/b/a FIESTA SHOWS; FIESTA   )
SHOWS, INC. d/b/a FIESTA SHOWS;   )
ATSEIF FESTIVAL MOBILE, INC.      )
d/b/a FIESTA SHOWS; EUGENE DEAN   )
III; EUGENE DEAN; LINDA CHAGROS;  )
NORMA DEAN; and MARY DEAN,        )
                                  )
             Defendants.          )
_____ )
```

April 13, 2015

Saris, Chief Judge.

## MEMORANDUM AND ORDER

Plaintiff Jorge Garcia[1] brings this proposed class action

against Fiesta Shows,[2] a company that provides rides and

attractions to fairs and carnivals throughout New England. Garcia

alleges that Fiesta Shows violated minimum wage and overtime laws

in Massachusetts and New Hampshire (Counts 1-2, 4-5); breached

contracts requiring the payment of prevailing wages set by the

---

[1]Plaintiffs Zachary Duclos, George Kent, and Jennifer Miller
have been dismissed from the case. (Docket Nos. 68, 175).

[2]Defendants are comprised of a number of corporate officers
and corporate entities collectively doing business as Fiesta
Shows.

U.S. Department of Labor (Count 8); and unlawfully forced foreign guest workers to pay pre-employment expenses like travel and costs for obtaining a visa (Counts 3, 6). Additionally, Garcia has alleged a common law claim for unjust enrichment. (Count 7).

Garcia now seeks to certify a class of current and former employees of Fiesta Shows for purposes of litigating his minimum wage and overtime claims under Massachusetts and New Hampshire law (Counts 1-2, 4-5).[3] Fiesta Shows opposes the motion and has filed a cross-motion to deny class certification. For the following reasons, Plaintiff's Motion for Class Certification (Docket No. 166) is **ALLOWED**. Defendants' Motion to Deny Class Certification (Docket No. 157) is **DENIED**.[4]

## I. LEGAL STANDARDS FOR CLASS CERTIFICATION

At the outset, the Court must determine the proper legal standard to be applied to Garcia's motion for class

_____

[3]Garcia mentions in a footnote his claim that foreign guest workers were unlawfully forced to pay visa fees and travel expenses (Counts 3, 6). His papers also refer throughout to his claim that Fiesta Shows breached its contracts with the Department of Labor (Count 8). But his papers do not offer any argument for why these specific claims are appropriate for class treatment. To the extent that he seeks to certify a class to litigate his expense claims and breach of contract claim, his motion is **DENIED**. Garcia may later move to amend the class to include these claims.

[4]Fiesta Shows has also moved to strike (1) affidavits by Matthew Thomson and Phillip Acevedo, who work at the law firm representing Garcia; and (2) declarations from certain members of the putative class. (Docket No. 187). This motion is **DENIED AS MOOT** because the Court does not rely on these statements.

certification. The First Circuit has stated that the Federal Rules of Civil Procedure apply in federal court as long as they (1) are valid under the Constitution and (2) do not "abridge, enlarge or modify any substantive right." Morel v. Daimler Chrysler AG, 565 F.3d 20, 24 (1st Cir. 2009) (quoting the Rules Enabling Act, 28 U.S.C. § 2072(b)); see also Hoyos v. Telcorp Commc'ns, Inc., 488 F.3d 1, 5 (1st Cir. 2007) ("[A] federal court sitting in diversity . . . must apply state substantive law, but a federal court applies federal rules of procedure to its proceedings."). For this reason, federal courts ordinarily apply Federal Rule of Civil Procedure 23 when adjudicating class certification motions. See In re Nexium Antitrust Litig., 777 F.3d 9, 17-18 (1st Cir. 2015); Greif v. Wilson, Elser, Moskowitz, Edelman & Dicker LLP, 258 F. Supp. 2d 157, 161 (E.D.N.Y. 2003) (agreeing that "all class actions in federal courts are governed by Rule 23" (emphasis added)). Rule 23 has also generally applied when federal courts are sitting in diversity and applying state substantive law. See Matamoros v. Starbucks Corp., 699 F.3d 129, 139 (1st Cir. 2012) (applying Rule 23 to class action alleging violations of the Massachusetts Tips Act); Manning v. Boston Med. Ctr. Corp., 725 F.3d 34, 58-59 (1st Cir. 2013) (applying Rule 23 to class action alleging Massachusetts common law claims).

Both parties, however, urge the Court to set aside Rule 23 for at least some of the claims. Garcia argues that a "more

3

lenient" standard applies to his claims under Massachusetts law. Meanwhile, Fiesta Shows argues that New Hampshire law does not allow class certification for wage and hour claims at all. Both of these arguments fail.

**A. Massachusetts Wage and Overtime Claims**

The Massachusetts wage and hour statute states that a plaintiff may bring a lawsuit on behalf of "himself and for others similarly situated." Mass. Gen. Laws c. 149, § 150, c. 151, §§ 1B, 20. Garcia's request for a "more lenient" standard is based on the Supreme Judicial Court's recent statement that the Massachusetts wage statute "specifically provides for a substantive right to bring a class proceeding." Machado v. System4 LLC, 989 N.E.2d 464, 470 (Mass. 2013). As a result, Garcia argues that the "traditional technicalities" of Rule 23 should not apply here because they might interfere with his substantive right to bring a class action in Massachusetts.

Garcia's argument stumbles at the starting gate because he does not explain how Rule 23 conflicts with the "more lenient" standard he proposes under Massachusetts law. Garcia suggests that Rule 23 might interfere with his substantive right to proceed as a class. But he does not explain how a class certification analysis under Massachusetts law would proceed any differently from a Rule 23 analysis. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("It is not enough merely

4

to mention a possible argument in the most skeletal way, leaving
the court to do counsel's work, create the ossature for the
argument, and put flesh on its bones.").

Nor do the cases cited by Garcia shed any light on what a
"more lenient" standard would look like here. See Machado, 989
N.E.2d at 470 (holding that the Federal Arbitration Act requires
enforcement of class action waivers in arbitration clauses even
when Massachusetts law provides for a "substantive right" to
bring a class proceeding); Sebago v. Tutunjian, 7 N.E.3d 1122, at
*2 n.6 (Mass. App. Ct. May 12, 2014) (unpublished) (citing to
Mass. R. Civ. P. 23, which is similar in all relevant aspects to
its federal counterpart); see also Salvas v. Wal-Mart Stores,
Inc., 893 N.E.2d 1187, 1207-10 (Mass. 2008) (applying Mass. R.
Civ. P. 23 to a class based on wage and hours claims). If
anything, Sebago and Salvas suggest that the Court should apply
Fed. R. Civ. P. 23 in the same way that Massachusetts courts
apply Mass. R. Civ. P. 23 to classes based on wage claims.

Garcia also cites to cases where Massachusetts courts have
recognized a lower threshold for class certification under the
Massachusetts Consumer Protection Act, Mass. Gen. Laws c. 93A
(Chapter 93A), instead of Mass. R. Civ. P. 23. See Aspinall v.
Philip Morris Cos., 813 N.E.2d 476, 485 (Mass. 2004); Fletcher v.
Cape Cod Gas Co., 477 N.E.2d 116, 122-23 (Mass. 1985). But
Garcia's attempt at analogizing Chapter 93A claims to wage and

overtime claims is like comparing cotton candy to corn dogs.
Chapter 93A class actions are subject to a less stringent
standard because the "statutory language in c. 93A § 9(2) differs
in significant respects from Mass. R. Civ. P. 23." Aspinall, 813
N.E.2d at 484. A plaintiff may bring a Chapter 93A class action
on behalf of "other similarly injured and situated persons":

> if the use or employment of the unfair or deceptive act or
> practice has caused similar injury to numerous other persons
> similarly situated and if the court finds in a preliminary
> hearing that he adequately and fairly represents such other
> persons

Mass. Gen. Laws c. 93A § 9(2). In Aspinall, the Court observed
that these requirements are significantly less demanding than
Mass. R. Civ. P. 23, which also requires a finding that: (1) the
class is so numerous that joinder of all members is
impracticable; (2) there are questions of law or fact common to
the class; (3) common questions predominate over individual
questions; and (4) a class action is superior to other available
methods for the fair and efficient adjudication of the
controversy. 813 N.E.2d at 484. As a result, the Court found that
the more lenient requirements for class certification under
Chapter 93A superseded Mass. R. Civ. P. 23. Meanwhile, the
Massachusetts Wage Statute merely states that a plaintiff may
bring a lawsuit on behalf of those who are "similarly situated."
Mass. Gen. Laws c. 151 §§ 1B, 20. It says nothing more about the
legal standards for class certification of wage claims. As a
result, there is no reason to think that Massachusetts law would

require class certification for wage and hour claims to be treated similarly to certification under Chapter 93A. Instead, the Court will proceed with a conventional class certification analysis under Fed. R. Civ. P. 23.

**B. New Hampshire Wage and Overtime Claims**

Fiesta Shows's attempts to displace Rule 23 based on an alleged conflict with New Hampshire law "fair" no better. N.H. Rev. Stat. § 275:53(I) states:

> Action by an employee to recover unpaid wages and/or liquidated damages may be maintained in any court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves, or such employee or employees may designate an agent or representative to maintain such action.

Fiesta Shows emphasizes that this language only explicitly authorizes actions by employees who (1) sue on their own behalf; or (2) designate an agent or representative to sue. The language does not mention class actions or employees who sue on behalf of others "similarly situated." Compare Mass. Gen. Laws c. 151 §§ 1B, 20. Fiesta Shows interprets this silence on class actions as a bar on class certification of wage claims. But this argument has now been rejected at least twice by courts interpreting § 275:53(I) in multi-district litigation. See In re FedEx Ground Package Sys., Inc., Emp. Practices Litig., 283 F.R.D. 427, 470 (N.D. Ind. 2012); Teoba v. Trugreen Landcare LLC, 769 F. Supp. 2d 175, 187-88 (W.D.N.Y. 2011). But see Trezvant v. Fid. Emp'r Servs. Corp., 434 F. Supp. 2d 40, 57 (D. Mass. 2006) (Young, J.)

(stating in dicta that the "wording of the statute and the lack
of class action employee wage lawsuits in New Hampshire leaves a
significant degree of doubt as to whether class actions are
allowed"). Both of these courts have observed that § 275:53
contains no express prohibition on class actions. <u>FedEx</u>, 273
F.R.D. at 470; <u>Teoba</u>, 769 F. Supp. 2d. 188. Instead, the statute
merely "broadens the class of persons who may bring specified
suits to include designated agents or representatives." <u>FedEx</u>,
273 F.R.D. at 470. The statute does not supersede the general
rule in New Hampshire that class actions are "permitted on the
basis of necessity and convenience." <u>See</u> <u>Royer v. State Dep't. of</u>
<u>Emp't Sec.</u>, 394 A.2d 828, 832-33 (N.H. 1978) (Douglas, J.,
concurring) ("Class actions, or representative suits, have been
recognized by this court for over one hundred years."). This
interpretation is also consistent with the well-established
principle in federal law that class relief is appropriate "in the
absence of a direct expression by Congress of its intent to
depart from the [Federal Rules of Civil Procedure]." <u>Califano v.</u>
<u>Yamasaki</u>, 442 U.S. 682, 700 (1979); <u>see also</u> <u>Cantwell v. J & R</u>
<u>Props. Unlimited, Inc.</u>, 924 A.2d 355, 358 (N.H. 2007) (explaining
that New Hampshire courts rely on federal cases interpreting Rule
23 to interpret New Hampshire rules for class certification). For
these reasons, the Court rejects Fiesta Shows's argument that New

Hampshire law bars class treatment for wage and overtime claims.[5]

Even if there is a conflict between New Hampshire law and Rule 23, the Court finds that Rule 23 does not "abridge, enlarge or modify" any substantive right in New Hampshire law. 28 U.S.C. § 2072(b) (Rules Enabling Act); see also Shady Grove Orthopedic Assocs, P.A. v. Allstate Ins. Co., 559 U.S. 393 (2010). In Shady Grove, the Supreme Court held that Rule 23 did not violate the Rules Enabling Act despite a direct conflict with New York's rules prohibiting class treatment of claims involving penalties or statutory minimum damages. 559 U.S. at 408 (plurality) (holding that rules allowing multiple claims to be litigated together-including Rule 23-are categorically valid under the Rules Enabling Act); id. at 436 (Stevens, J., concurring) (finding that New York's prohibition on class actions was not an attempt to define rights or remedies). The plurality in Shady Grove also observed that the Supreme Court has rejected every challenge to the Federal Rules of Civil Procedure under the Rules Enabling Act. Id. at 407-08. For these reasons, the Court finds that Rule 23 does not "abridge, enlarge or modify any substantive right" simply because it allows for class adjudication of wage and overtime claims in circumstances where New Hampshire law

---

[5]Fiesta Shows also cites to Labor Ready Ne., Inc. v. N.H. Dep't of Labor, 798 A.2d 48 (N.H. 2002), which is factually and legally unrelated to this case. Labor Ready holds that a Department of Labor commissioner may not pursue a wage adjustment claim under N.H. Rev. Stat. § 275:53 without express assignment from an employee. Id. at 50.

would not. 28 U.S.C. § 2072(b).

## II. RULE 23(a) REQUIREMENTS

The show must go on. Under Rule 23, a proposed class must initially satisfy four requirements: (1) the class is so numerous that joinder of all members is impracticable (numerosity); (2) there are questions of law or fact common to the class (commonality); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class (typicality); and (4) the representative parties will fairly and adequately protect the interests of the class (adequacy). Fed. R. Civ. P. 23(a). The plaintiffs have the burden of showing that all the prerequisites for a class action have been met. Makuc v. Am. Honda Motor Co., 835 F.2d 389, 394 (1st Cir. 1987). The Court "must conduct a rigorous analysis of the prerequisites established by Rule 23 before certifying a class." Smilow v. Sw. Bell Mobile Sys., Inc., 323 F.3d 32, 38 (1st Cir. 2003). The Court finds that each of these requirements has been satisfied here.

### A. Numerosity

The first requirement of Rule 23(a) is that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The First Circuit has characterized the numerosity requirement as a "low threshold." Garcia-Rubiera v. Calderon, 570 F.3d 443, 460 (1st Cir. 2009). "No minimum number

of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." Id. (quoting Stewart v. Abraham, 275 F.3d 220, 226-27 (3d Cir. 2001)); see also George v. Nat'l Water Main Cleaning Co., 286 F.R.D. 168, 173 (D. Mass. 2012) ("[C]ourts have generally found that a class size of forty or more individuals will satisfy the numerosity requirement.").

The numerosity requirement is easily satisfied here. Garcia has identified more than 160 Fiesta Shows workers who allegedly suffered wage and overtime violations under Massachusetts and New Hampshire law. For reasons explained in Section III.A., the Court will exclude from the class approximately 60 workers who signed agreements releasing their claims against Fiesta Shows. But even after subtracting these 60 workers, the proposed class still meets the numerosity requirement. The Court finds that joinder of all these people would be impracticable.

**B. Commonality**

The second requirement of Rule 23(a) is that there must be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The Supreme Court has recently warned that this language is "easy to misread" because any competently crafted class complaint literally raises common questions. Wal-Mart Stores, Inc. v. Dukes, ___ U.S. ___, 131 S. Ct. 2541, 2551

(2011). To satisfy this requirement, the class claims must depend upon a "common contention" that is "capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." <u>Id.</u> In other words, the commonality requirement is met where the "questions that go to the heart of the elements of the cause of action" will "each be answered either 'yes' or 'no' for the entire class" and "the answers will not vary by individual class member." <u>Donovan v. Philip Morris USA, Inc.</u>, 2012 WL 957633, at *21 (D. Mass. Mar. 21, 2012).

In wage and overtime cases, for example, courts have rejected class certification where a determination of liability would require a burdensome inquiry into each employee's individual circumstances. <u>See</u> <u>Myers v. Hertz Corp.</u>, 624 F.3d 537, 548 (2d Cir. 2010) (key question was whether each employee was an "executive," which would require individualized inquiry into each class member's unique job duties); <u>Enriquez v. Cherry Hill Market Corp.</u>, 993 F. Supp. 2d 229, 234 (E.D.N.Y. 2014) (denying class certification for minimum wage violations); <u>Raposo v. Garelick Farms, LLC</u>, 293 F.R.D. 52, 56 (D. Mass. 2013) (commonality absent where not every class member worked through meals for the same reasons or without compensation). In <u>Enriquez</u>, for example, the Court found that every employee worked a different schedule and was paid a different weekly salary. 993 F. Supp. 2d at 233. As a result, resolving one class member's minimum wage claim would not assist in resolving the claims of any other class member, even if

12

the defendant was "systematically" underpaying its employees. Id.

On the other hand, courts have found the commonality requirement met where employees alleged per se illegal wage policies that violated the rights of all class members. See George, 286 F.R.D. at 175 ("[H]ere the allegations against the Corporate Defendants are that their wage policies facially violated state law, which requires little individual inquiry."); Overka v. Am. Airlines, Inc., 265 F.R.D. 14, 18 (D. Mass. 2010) ("Commonality is satisfied where the lawsuit challenges a system-wide practice or policy that affects all of the putative class members." (quotation marks omitted)); Ramirez v. Riverbay Corp., 39 F. Supp. 3d 354, 364 (S.D.N.Y. 2014) ("[C]ourts addressing the commonality requirement after Dukes have typically held that the requirement is satisfied where employees claim that they were denied minimum wage or overtime compensation as a result of a corporate employment policy." (collecting cases)). Wage claims involving system-wide practices or policies are appropriate for class treatment because establishing liability for one employee necessarily establishes liability for the entire class.

With these principles in mind, the Court finds that this case potentially involves a number of important factual and legal questions that can be resolved for the entire class simultaneously:

First, the parties can use common sources of proof to establish the number of hours worked by Fiesta Shows employees, which is a key disputed issue for every class member's minimum

wage and overtime claims. Fiesta Shows admits that it did not keep individualized records for the number of hours worked by each employee. Instead, it kept a so-called "gang time" payroll that solely tracked the maximum number of hours that any employee could have worked each week. This "gang time" payroll can serve as presumptive proof for the number of weeks and hours for which the class is entitled to backpay. Garcia can argue that all of the class members presumptively worked overtime in the weeks where the "gang time" payroll exceeded 40, 50, or even 60 hours. Meanwhile, Fiesta Shows can argue that none of the class members are entitled to overtime compensation in weeks where the "gang time" payroll falls below 40 hours. Similarly, the "gang time" payroll records can serve as common proof for how much Fiesta Shows was required to pay each week in order to comply with minimum wage laws. If the "gang time" payroll indicates that employees worked for a maximum of 30 hours in a week, and the applicable minimum wage was $8.00 an hour, Fiesta Shows can argue that every class member paid at least $240 that week (30 hours x $8/hour) received a minimum wage. Also, Garcia can argue that all class members who made less than $240 that week represents a presumptive minimum wage violation.

Beyond the "gang time" payroll, Garcia can also use representative testimony from Fiesta Shows employees as common proof of the hours worked by the class. As mentioned above, Fiesta Shows failed to keep records of the specific number of hours worked by each employee, which was a violation of

Massachusetts and New Hampshire law. See Mass. Gen. Laws c. 151 §
15; N.H. Code Admin. Rules, Lab 803.03(f). Fiesta Shows cannot
now benefit from its malfeasance by avoiding class certification
on this basis. Instead, it is well-established that where as here
an employer failed to keep adequate records, a class can "rely on
testimony from representative employees" to establish a wage or
overtime violation. Sec'y of Labor v. DeSisto, 929 F.2d 789, 792
(1st Cir. 1991) (citing Anderson v. Mt. Clemens Pottery Co., 328
U.S. 680, 687 (1946)); see also Reich v. Gateway Press, Inc., 13
F.3d 685, 701 (3d Cir. 1994) ("Courts commonly allow
representative employees to prove violations with respect to all
employees." (collecting cases)); Morgan v. Family Dollar Stores,
Inc., 551 F.3d 1233, 1279 (11th Cir. 2008) ("If anything, the Mt.
Clemens line of cases affirms the general rule that not all
employees have to testify to prove overtime violations."). The
Court recognizes that Fiesta Shows will be able to respond with
"evidence of the precise amount of work performed or with
evidence to negative the reasonableness of the inference to be
drawn from the employee's evidence." DeSisto, 929 F.2d at 792
(quotation marks omitted). But if Fiesta Shows cannot present
this evidence, the Court will be able to award damages to each
employee, "even though the result may be only approximate." Id.
(quotation marks omitted).

Next, Fiesta Shows has also raised a number of potential
defenses that are appropriate for class treatment. For example,
Fiesta Shows alleges that it used a pre-payment plan in which

15

employees worked fewer hours earlier in the season but were paid the same flat weekly salary. These weekly payments in the early part of the season were intended, Fiesta Shows says, to be an advance payment of wages for future weeks when employees might have to work overtime. Also, Fiesta Shows alleges that it analyzed the "gang time" payroll at the end of each season to determine whether any employees were underpaid. Every employee received an extra lump sum payment, the company says, to compensate for unpaid overtime or minimum wages. Finally, Fiesta Shows alleges that it was exempt from paying overtime requirements as a seasonal amusement park under Mass. Gen. Laws c. 151, § 1A(20); NH. Rev. Stat. § 279:21(VIII). If these defenses are meritorious, every class member's claim would be adversely affected.

Garcia has facially challenged the factual and legal basis of these wage policies on behalf of the entire class. He argues that Fiesta Shows never informed its employees that they were receiving pre-payments earlier in the season as a credit for future overtime. Nor did Fiesta Shows keep any running track record of the advances or try to recoup them when employees left in the middle of a season. In any event, Garcia argues that pre-payment systems categorically fall short of Massachusetts overtime requirements. Similarly, Garcia intends to prove that Fiesta Shows's alleged end-of-year payments were not overtime compensation but rather discretionary bonuses. And even if they were intended to serve as overtime compensation, he argues that

these overtime payments were not timely. Finally, Garcia argues that the seasonal amusement park exemption does not apply to Fiesta Shows because it operated more than 7 months, <u>see</u> N.H. Rev. Stat. 279:21(VIII), and 150 days each year, <u>see</u> Mass. Gen. Laws c. 151, § 1A(20).

Again, these factual and legal questions are present in the claims of all class members. For all these reasons, the commonality requirement is met here.

**C. Typicality**

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." "The commonality and typicality requirements of Rule 23(a) tend to merge. Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." <u>Dukes</u>, 131 S. Ct. at 2251 n.5 (quotation marks omitted). "Commonality looks at the relationship among the class members generally, while typicality focuses on the relationship between the proposed class representative and the rest of the class." <u>George</u>, 286 F.R.D. at 176. "The central inquiry in determining whether a proposed class has 'typicality' is whether the class representatives' claims have the same essential characteristics as the claims of the other members of the class."

<u>Barry v. Moran</u>, 2008 WL 7526753, at *11 (D. Mass. Apr. 7, 2008) (quotation marks omitted). Typicality may be defeated "where the class representatives are subject to unique defenses which threaten to become the focus of the litigation." <u>In re Credit Suisse AOL Sec. Litig.</u>, 253 F.R.D. 17, 23 (D. Mass. 2008). It may also be defeated where class members have additional claims or remedies that are unavailable to the class representative. <u>See Swanson v. Lord & Taylor LLC</u>, 278 F.R.D. 36, 41 (D. Mass. 2011).

Garcia's minimum wage and overtime claims are typical of the claims he intends to bring on behalf of the class. As mentioned above, both parties will be able to use the "gang time" payroll system to establish the number of hours worked each week by the class, Garcia included. Fiesta Shows will argue that the entire class-including Garcia-is not entitled to overtime in the weeks where the "gang time" payroll recorded fewer than 40 hours worked. Meanwhile, Garcia will argue that the entire class deserves overtime in the weeks where the "gang time" payroll exceeded 40 hours. Garcia will also use representative testimony to establish the number of hours he worked, and this number will apply to the rest of the class. Additionally, Fiesta Shows has several defenses that potentially defeat Garcia's claims in the same way that they defeat the class's claims. Like the other class members, Garcia received a flat weekly salary each week that could be interpreted as a pre-payment of wages, and he received end-of-season payments as well. In short, the contours of Garcia's claims are typical of the claims of other class

members.

The Court recognizes that Garcia's claims may not be identical with those held by other class members. For example, Fiesta Shows points out that Garcia–unlike others in the class–was injured for several weeks during the 2011 season and continued to be paid despite doing no work. The company also argues that Garcia's motives and credibility are uniquely open to attack. They intend to show that Garcia brought this lawsuit in part because he wanted to work for Fiesta Shows in 2012 but was not rehired, and he was also encouraged to file the lawsuit by a non-profit organization.

But these minor differences are not sufficient to defeat typicality. See In re Nuerontin Marketing and Sale Practices Litig., 244 F.R.D. 89, 106 (D. Mass. 2007) ("Typicality, as with commonality, does not require that all putative class members share identical claims."). More to the point, the Court does not find that these factual differences will become a side show, or a side fiesta. For starters, Garcia worked for Fiesta Shows during both the 2010 and 2011 seasons, and so his wage and overtime claims from 2010 are unaffected by his injury in 2011 and remain typical of the claims held by other class members. Also, the Court does not find that these particular challenges to Garcia's credibility other class members or make him atypical. Rather, the focus of the case will remain on whether Fiesta Shows maintained an adequate system of paying minimum wage and overtime compensation during weeks when the class worked long hours. For

these reasons, the Court is confident that Garcia's claims are sufficiently similar to the rest of the class to satisfy the typicality requirement.

**D. Adequacy**

"The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." Amchem Products, Inc. v. Windsor, 521 U.S. 591, 623 (1997). The First Circuit has said that the adequacy requirement has two parts. Andrews v. Bechtel Power Corp., 780 F.2d 124, 130 (1st Cir. 1985). "The moving party must show first that the interests of the representative party will not conflict with the interests of any of the class members, and second, that counsel chosen by the representative party is qualified, experienced, and able to vigorously conduct the proposed litigation." Id. Applying this standard, the Court finds that both of these requirements are met.

First, the Court finds no conflicts of interest between Garcia and his proposed class. Fiesta Shows suggests that there is a conflict of interest because many putative class members have expressed satisfaction with Fiesta Shows's wage and hour practices. But the First Circuit has stated that "an interest by certain putative class members in maintaining the allegedly unlawful policy is not a reason to deny class certification." Matamoros, 699 F.3d at 138. "Only conflicts that are fundamental to the suit and that go to the heart of the litigation prevent a

plaintiff from meeting the Rule 23(a)(4) adequacy requirement."
Id. (quoting 1 William B. Rubenstein, Newberg on Class Actions §
3:58 (5th ed. 2012)). Fiesta Shows has not identified any
conflicts of interest that will prevent Garcia from fully
pursuing the interests of the class.

Second, the Court also finds that Garcia's counsel is
experienced and more than capable of proceeding with the
litigation. Fiesta Shows again points out that a number of class
members have refused to participate in this litigation, and one
former class representative asked Garcia's counsel to dismiss her
from the case after reaching a settlement. Fiesta Shows also
cites to a number of cases denying conditional certification
under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201,
because of a lack of interest among the proposed class. See
Andrews, 780 F.2d at 131; O'Donnell v. Robert Half Int'l, Inc.,
429 F. Supp. 2d 246, 250-51 (D. Mass. 2006). This argument fails
to recognize, however, that Rule 23 class actions and FLSA class
actions are materially different. FLSA class actions require
potential plaintiffs to opt-in. See 29 U.S.C. § 216(b) ("No
employee shall be a party plaintiff to any such action unless he
gives his consent in writing to become such a party and such
consent is filed in the court in which such action is brought.");
Yayo v. Museum of Fine Arts, 2014 WL 2895447, at *3 (D. Mass.
June 26, 2014). As a result, courts have recognized that it makes
no sense to grant conditional certification under the FLSA if no
putative class members are interested in joining the suit. See

21

<u>Johnson v. VCG Holding Corp.</u>, 802 F. Supp. 2d 227, 237 (D. Me. 2011) ("[I]f those other, similarly situated persons were to decline to opt in to the case, no purpose would have been served by 'certifying' a collective-action 'class'–the case ultimately would involve no one other than the plaintiff." (quotation marks omitted)). Meanwhile, Rule 23 class actions are opt-out. <u>See</u> Fed. R. Civ. P. 23(c)(2)(B)(v). Because of this key difference, the Court is not aware of any cases placing an additional burden on Rule 23 plaintiffs to demonstrate interest by putative class members. That others have been hesitant to "step on up" to join Garcia as a class representative is not a barrier to Rule 23 class certification.

### III. RULE 23(b)(3) REQUIREMENTS

Because Garcia seeks to certify a class under Rule 23(b)(3), he must also show that: (1) questions of law or fact common to class members predominate over any questions affecting only individual members (predominance); and (2) a class action is superior to other available methods for fairly and efficiently adjudicating the controversy (superiority). Fed. R. Civ. P. 23(b)(3). The Court finds that Garcia has satisfied these requirements as well.

**A. Predominance**

The predominance inquiry is "far more demanding" than the commonality requirement. <u>In re New Motor Vehicles Canadian Export Antitrust Litig.</u>, 522 F.3d 6, 20 (1st Cir. 2008) (quoting <u>Amchem</u>

_Products, Inc. v. Windsor_, 521 U.S. 591, 624 (1997)). "[A]
district court must formulate some prediction as to how specific
issues will play out in order to determine whether common or
individual issues predominate in a given case." _Waste Mgmt._
_Holdings, Inc. v. Mowbray_, 208 F.3d 288, 298 (1st Cir. 2000). A
need for individualized determination of affirmative defenses
should be considered in making the predominance inquiry. _Id._ at
295. Nevertheless, "[c]ourts traditionally have been reluctant to
deny class action status under Rule 23(b)(3) simply because
affirmative defenses may be available against individual
members." _Smilow_, 323 F.3d at 39.

The Court finds that the predominance requirement is
satisfied here. As mentioned above, Garcia has identified a
number of factual and legal issues that can be addressed on a
class-wide basis including: (1) whether the class worked over 40
hours during any given week; (2) the amount Fiesta Shows was
required to pay each week to satisfy the minimum wage; (3) the
factual and legal significance of Fiesta Shows's alleged pre-
payment of wages; (4) the factual and legal significance of
Fiesta Shows's end-of-year lump sum payments; and (5) whether
Fiesta Shows was a seasonal amusement park. These are important
and hotly contested issues in this case. The Court expects that
they will predominate over any individualized questions.

Granted, Fiesta Shows points out a number of individualized
determinations that will still need to be addressed. Most
relevant, the company points out that each individual employee

earned a different weekly salary. As a result, the Court understands that establishing liability for minimum wage claims will require a brief examination of each class member's pay stubs. But the Court does not find that determining each class member's weekly salary will be an arduous task, especially when there is no dispute regarding how much each employee was paid on a weekly basis and there is a presumptive number of hours worked based on the "gang time" payroll.

Calculating the precise amount of damages owed to each class member may also require some individualized inquiry. But this task also does not stand in the way of class certification. Courts have repeatedly held that "[w]here as here, common questions predominate regarding liability, then courts generally find the predominance requirement to be satisfied even if individual damages issues remain." Smilow, 323 F.3d at 40 (collecting cases). This is especially true because the Court has other management tools at its disposal to conduct individual damage proceedings. For example, the Court could decertify Garcia's class after liability issues have been resolved. See Tardiff v. Knox Cnty., 365 F.3d 1, 7 (1st Cir. 2004) ("The Court could enter a judgment of liability, leaving class members to pursue damage claims in separate law suits."). Alternatively, the Court could appoint a magistrate judge or special master to preside over individual damages proceedings. See Martins v. 3PD Inc., 2014 WL 1271761, at *12 (D. Mass. Mar. 27, 2014) ("The appointment of a special master is often a preferred method for

24

placing a dollar figure on individual damages where liability has already been determined on a class-wide basis."). In any event, the Court may also be able to establish a presumptive level of damages for each class member based on the "gang time" payroll and the representative testimony of class members regarding the number of hours worked by the class.

This course of action is consistent with the Supreme Court's recent decision in Comcast Corp. v. Behrend, ___ U.S. ___, 133 S. Ct. 1426 (2013). There, the Court stated that the predominance requirement might not be met where "questions of individual damage calculations will inevitably overwhelm questions common to the class." Id. at 1433. Here, the method for calculating each plaintiff's damages will likely be mechanical, based on plaintiff's salary and common evidence about the typical number of hours worked. The Court also finds that questions of individual damage calculations will not inevitably overwhelm the common questions here, for all the reasons mentioned above. See Martins, 2014 WL 1271761, at 13 n.7 ("Following Comcast, courts have continued to find class treatment appropriate even where individual damages issues exist." (collecting cases)); George v. Nat'l Water Main Cleaning Co., 2014 WL 1004109, at *4 (D. Mass. Mar. 17, 2014) ("Even in the wake of Comcast, the focus remains on the predominance of common issues and answers upon the class members and not the absence of any individualized damages analysis.").

Finally, Fiesta Shows points out that a substantial number

of class members signed agreements retroactively releasing their wage and overtime claims for $100 in connection with signing employment agreements for the 2014 season. These agreements also include arbitration provisions that require adjudication of any employment-related disputes on an individual, non-class basis. The Court has too limited a record to determine whether the factual and legal significance of these agreements are common questions that can be resolved for the class all at once. It may also create a conflict of interest within the class. Class members like Garcia who did not sign the agreement, for example, may view the enforceability of the agreement somewhat differently than those who settled with Fiesta Shows and received consideration for releasing their claims. As a result, at this stage of the litigation, the Court will not include in the class those who signed a release of their claims.

**B. Superiority**

Finally, a Rule 23(b)(3) class should only be certified where "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." A Rule 23(b)(3) class action is particularly superior where class treatment can vindicate the claims of "groups of people whose individual claims would be too small to warrant litigation." Smilow, 323 F.3d at 41; see also Deposit Guar. Nat'l Bank v. Roper, 445 U.S. 326, 338 n.9 ("A significant benefit to claimants who choose to litigate their individual claims in a class-action

context is the prospect of reducing their costs of litigation, particularly attorney's fees, by allocating such costs among all members of the class who benefit from any recovery."). "[A] class action has to be unwieldy indeed before it can be pronounced an inferior alternative–no matter how massive the fraud or other wrongdoing that will go unpunished if class treatment is denied–to not litigation at all." In re McKesson Gov't Entities Average Wholesale Price Litig., 767 F. Supp. 2d 263, 271 (D. Mass 2011) (quoting Carnegie v. Household Int'l, Inc., 376 F.3d 656, 661 (7th Cir. 2004)).

For all of the reasons previously mentioned, the Court also finds that a class action here is the superior method for adjudicating this controversy. The Court does not find any significant management issues in proceeding as a class action, and the Court is also not aware of any other pending related litigation. Beyond that, the Court finds that a class action lawsuit would be a better option than multiple individual actions, coordinated individual actions, consolidated individual actions, test cases, or any of the other known options. In particular, the class is composed of many individual claims that would likely be too small to warrant litigation. Many of the class members are low-income, uneducated, and lack the resources to litigate their own claims. Other class members also live outside the United States and come each year only during the carnival season, which would make litigation difficult for them. The superiority requirement is easily established here.

## IV. CERTIFYING THE CLASS

Federal Rule of Civil Procedure 23(c)(1)(B) requires the class certification order to "define the class and the class claims, issues or defenses" and must appoint class counsel under Fed. R. Civ. P. 23(g). The Court defines the class as follows:

> All minimum wage and overtime-eligible workers employed by Fiesta Shows beginning in 2010. The class does not include any workers who signed the "2014 Employment Job Offer & Contract" or any similar document releasing their claims specifically related to this lawsuit.

The Court appoints Shannon Liss-Riordan and Matthew Thomson of Lichten & Liss-Riordan, P.C. as class counsel.[6]

## V. ORDER

Plaintiff's Motion for Class Certification (Docket No. 166) is **ALLOWED**. Defendants' Motion to Deny Class Certification (Docket No. 157) is **DENIED**.

        /s/ PATTI B. SARIS
        PATTI B. SARIS
        United States District Judge

---

[6]At the hearing, Fiesta Shows mentioned in passing that the company changed some of its wage and record-keeping policies beginning in 2014. Fiesta Shows has not yet produced enough evidence to establish that all claims from the 2014 season should be excluded.